IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEXII BUILDING SOLUTIONS INC., et al.,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 24-10026<br><br>(Joint Administration Requested) |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C.§ 1515 AND RULE 1007(a)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, William Tucker, to the best of my information and belief, state as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise. I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. I am the Acting Chief Executive Officer of Nexii Building Solutions, Inc. (the "Foreign Representative" or "NBSI"). I am familiar with the above-captioned debtors (collectively, the "Debtors" or "Nexii"), whose reorganization proceedings (the "CCAA Proceedings") are currently pending in British Columbia, Canada pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "CCAA").

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's unique identifier, are Nexii Building Solutions Inc. (0911), Nexii Construction Inc. (1333), NBS IP Inc. (9930), and Nexii Holdings Inc. (5873). The Debtors' service address for purposes of these Chapter 15 Cases is 1455 West Georgia Street, #200, Vancouver, British Columbia V6G 2T3.

3. I submit this declaration in support of: (a) the official form chapter 15 petitions for the Debtors (the "Voluntary Petitions"); (b) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (c) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"); (d) the *Motion for Order (I) Directing Joint Administration of Cases Under Chapter 15 of the Bankruptcy Code and (II) Authorizing Foreign Representative to File Consolidated Lists of Information Required by Bankruptcy Rule 1007(A)(4)* (the "Joint Administration Motion"); and (e) the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Notice Procedures Motion").

## I. DEBTORS' BUSINESS OPERATIONS

4. The Debtors are a green construction company that uses its proprietary material, Nexiite, to manufacture high performance cladding and structural wall panels ("Nexiite Panels") which are used in the construction of high-performance buildings. The Nexiite Panels and their construction configurations are lightweight, more sustainable than concrete, and result in buildings that are recyclable, energy efficient, and resistant to fire, water, and mold. Nexiite is a low-carbon alternative to concrete that, since 2010, has been installed in numerous buildings, including new-builds and retrofits in both commercial and industrial structures.

5. As of the Petition Date, the Debtors have leases for a main office in Vancouver, British Columbia (the "Vancouver Headquarters"), a manufacturing facility in Squamish, British Columbia (the "Squamish Facility"), and a manufacturing facility in Moose Jaw, Saskatchewan

(the "Moose Jaw Facility"). Other than the Squamish Facility, the Debtors no longer require these premises as the Debtors no longer perform active operations in the Vancouver Headquarters and Moose Jaw Facility.

6.      As of December 20, 2023, Debtor NBSI has 137 employees, 75 of whom work at the Squamish Facility and 62 work at the Vancouver Headquarters. Debtor Nexii Holdings Inc. ("Nexii US") has 5 employees in the United States, all of whom work remotely. Debtors Nexii Construction Inc. ("Nexii Construction") and NBS IP Inc. ("NBS IP") have no employees.

## II.     THE DEBTORS' CORPORATE STRUCTURE AND LEADERSHIP

7.      NBSI, a corporation incorporated in British Columbia, Canada, is the direct parent of each of the other three Debtors. Nexii Construction and NBS IP are corporations incorporated in British Columbia, Canada and Nexii US is a corporation incorporated in Delaware. Nexii US employs Nexii's five US-based employees, but it does not have significant assets and all US contracts are with NBSI. In addition, NBSI is the direct or indirect parent of six other entities (collectively, the "Omicron Entities"),[2] none of which are petitioners in the CCAA Proceedings or Debtors in these Chapter 15 Cases. The Debtors' and Omicron Entities' organizational chart is as follows:

---

[2] The Omicron Entities, which were acquired by NBSI in 2021, function independently from the Debtors. The Omicron Entities are in the business of design, building, and construction of large commercial and residential projects in Western Canada. None of the Omicron Entities have any assets or operations in the United States.



8. NBSI's equity, though not publicly traded, is widely held; as of the Petition Date, there are approximately 1,500 holders of NBSI's common stock.

9. In the months leading to the commencement of the CCAA Proceedings, Nexii has had a number of senior management changes, including the departures of their former Chief Executive Officer, Executive Vice President of Manufacturing, Vice President of Investor Relations, and Vice President of Finance. As of the Petition Date, the senior management of the Debtors are myself (the Acting Chief Executive Officer) and David Bryant (a Senior Executive Advisor). I am primarily responsible for the direction of the Debtors' corporate, management, and strategic functions, including overseeing the team that manages the Debtors' cash management system (the "Cash Management System") and accounting functions, all of which I manage from the Vancouver Headquarters.

### III.     THE DEBTORS' CAPITAL STRUCTURE[3]

10.     The Debtors'[4] primary secured creditors are Powerscourt Investments XXV, LP ("PC LP") as lender, Powerscourt Investments XXV Trust as assignee of PC LP as lender, Trinity Capital Inc. as lender, Horizon Technology Finance Corporation ("Horizon") as lender, Horizon Credit II LLC as assignee of Horizon as lender, Horizon Funding I LLC as assignee of Horizon as lender, and Horizon Funding Trust 2022-1 as assignee of Horizon as lender (collectively, the "Senior Secured Lenders").

11.     The Debtors' debt to the Senior Secured Lenders is for loans and credit facilities (collectively, the "Loans") made available pursuant to, among other things, an Amended and Restated Venture Loan and Security Agreement dated as of June 8, 2022 (as amended from time to time, the "Loan Agreement") entered into between Horizon, as collateral agent for and on behalf of the Senior Secured Lenders, each of the Senior Secured Lenders, and the Debtors and Omicron Entities.

12.     The Senior Secured Lenders advanced nine loans under the Loan Agreement in the aggregate principal amount of $60,000,000.  Each of the Senior Secured Lenders have advanced Loans, documented in promissory notes.  As among the Senior Secured Lenders, there have been various assignments of the right, title, and interest in and to the Loans.

13.     The Debtors' and the Omicron Entities' obligations under the Loans are secured by substantially all of the Debtors' and Omicron Entities' assets.  As described below, following a

---

[3]     The summaries provided herein are qualified in their entirety by the provisions of the relevant loan documents.
[4]     The Omicron Entities are also obligors on the Loans (as defined herein).

series of defaults and further financing from the Senior Secured Lenders to the Debtors, the obligations under the Loan Agreement now exceed $79,000,000.

14. The Debtors also have other secured liabilities with respect to various leased equipment, including vehicles, office equipment, software licensing, and industrial machinery, and owe these creditors approximately CA$625,000. Additionally, the Debtors have obtained project bonding for certain projects, which if drawn would expose the Debtors to approximately CA$2 million in liability.

15. The Debtors owe approximately CA$5.6 million to various unsecured trade creditors and service providers. Debtor NBSI is in default to its landlord and owes approximately CA$950,000 in base rent arrears. In addition, the Debtors are party to the following litigation in the United States (in addition to other litigation in Canada):

    a. *Nexii Building Solutions Inc. v. NexUS 1, LLC et al.*, Case No. 1:22-cv-01619-RGA (D. Del. December 22, 2022)

    b. *Nexus 1, LLC et al. v. Sidwell et al.*, Case No. 2:23-cv-00216-KNS (E.D. Pa. January 19, 2023)

    c. *Nexii Building Solutions Inc. v. Nexus 1, LLC et al.*, Case No. 2:23-cv-00398-MMB (E.D. Pa. January 31, 2023)

## IV. EVENTS LEADING TO THE CCAA PROCEEDINGS

### A. Efforts Prior to the Commencement of the CCAA Proceedings.

16. Beginning in 2021, the Debtors pursued aggressive growth, including expansion of its facilities and operations. This included opening a manufacturing facility in Pennsylvania. However, the counterparty under the licensing agreement for this facility did not pay their initial licensing fee (CA$5 million) and was unable to perform due to lack of working capital. The

agreement ultimately came at significant cost to the Debtors as the Debtors worked, with no compensation, for over a year, to protect the Debtors' brand from potential project defaults.

17. While the Debtors' business did grow, the growth did not meet expectations and the costs associated with such growth exceeded revenue and the Debtors were unable to service their secured debt obligations to the Senior Secured Lenders. The Debtors did undertake cost-reduction actions, including reengineering its product to make it profitable and competitive in the marketplace, two staff-level adjustments (in January 2023 and fall 2023) that resulted in the termination of over 40% of NBSI's personnel, the cessation of operations at NBSI's facility in Moose Jaw, Saskatchewan, and a significant reduction in SG&A expenses.

18. Following the failure to pay amounts due and owing under the Loan Agreement, the Senior Secured Lenders noticed events of default under the Loan Agreement and made a formal demand for payment in a letter dated June 21, 2023 to the Debtors (the "Demand"). According to the Demand, the Debtors owed approximately $66 million in principal and interest to the Senior Secured Lenders as of such date, plus accruing interest and costs (the "Indebtedness").

19. The Debtors and Senior Secured Lenders entered into an accommodation agreement on June 21, 2023 (the "Accommodation Agreement"). As part of the Accommodation Agreement, the Senior Secured Lenders agreed to make additional funds available to the Debtors in multiple tranches, up to $5 million, but ultimately advanced an aggregate sum of $7,000,000 in the form of secured promissory notes. The key terms of the Loan Agreement and the Accommodation Agreement included: (a) interest at a rate of the prime rate published in the Wall Street Journal, plus 7.00% per annum (with a minimum rate of 10.25% per annum); (b) upon an

event of default, the interest rate increases by 5.00% per annum; (c) upon an event of default under the Loan Agreement or the Accommodation Agreement, all amounts owing become immediately due and payable; and (d) each of the Debtors and Omicron Entities is joint and severally liable for all obligations owing under the Loan Agreement.

20. Following the expiration of the Accommodation Agreement and related forbearance, the Debtors notified the Senior Secured Lenders of continued, significant liquidity constraints and the inability to continue operations without additional financing. In response, the Senior Secured Lenders advised the Debtors that they were unwilling to advance further funds without a clear path to selling the business through an orderly, court-supervised process.

21. In order to maintain sufficient liquidity and stability, the Debtors and the Senior Secured Lenders entered into an Amended and Restated Accommodation Agreement effective December 15, 2023 (the "A&R Accommodation Agreement"). Pursuant to the A&R Accommodation Agreement, the Senior Secured Lenders agreed to make additional funding available and forbear from exercising their rights and remedies, provided certain conditions were met. These conditions included commencing the CCAA Proceedings in the Canadian Court and a chapter 15 proceeding in the United States for recognition of the CCAA Proceedings thereafter.

### B. Need for Canadian and U.S. Court Protection.

22. In light of the foregoing, the Debtors made the decision to seek relief and protection under the CCAA in Canada and chapter 15 in the United States so as to be able to preserve enterprise value. The Debtors intend to utilize the CCAA and chapter 15 to obtain financing to meet critical expenses and to conduct an orderly sale process (the "Sale Process"). The Debtors

believe that the proposed restructuring process described below constitutes the most value-maximizing option under the circumstances.

23. If the Senior Secured Lenders were to enforce their rights under the Loan Agreement, the Accommodation Agreement, or the A&R Accommodation Agreement, it would be destructive to the business and value of both the Debtors and the Omicron Entities. In particular, the value and continuity of the business' contracts (which represents the majority of the Debtors' value) would be jeopardized and at risk in enforcement proceedings.

24. These Chapter 15 Cases are of particular importance to the Debtors' overall restructuring process and the preservation of value for the Debtors' constituents. All but one of NBSI's contracts are related to projects in the United States—representing substantial value that could be at risk absent the protections afforded to the Debtors under chapter 15 of the Bankruptcy Code.

25. Although the Debtors' contracts are in the United States, the headquarters and chief place of business for the Debtors is British Columbia. All strategic and key operational decisions, including for Nexii US, are made by senior management located in Vancouver. The vast majority of the Debtors' employees are located in British Columbia, as are the majority of the Debtors' physical assets.

## V. THE CCAA PROCEEDINGS.

26. On January 11, 2024, the Debtors commenced the CCAA Proceedings with the Supreme Court of British Columbia (the "Canadian Court") pursuant to the CCAA with the goal of pursuing the Sale Process and restructuring operations under the protections offered by the

CCAA. On January 11, 2024, the Canadian Court entered an interim order (the "Initial CCAA Order"). The Initial CCAA Order includes a "no default" provision and is attached to the Provisional Relief Motion as Exhibit 1. More specifically paragraph 18 of the Initial CCAA Order provides as follows:

> The granting of this Order, the Application and any affidavits and other materials filed in support of the Application shall not, in in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

Initial CCAA Order, ¶ 18.

27.   In addition, the Initial CCAA Order expressly requests that courts in the United States recognize the CCAA Proceedings to aid and assist the Canadian Court in carrying out the terms of the Initial CCAA Order. Paragraphs 55 and 56 of the Initial CCAA Order provide, in relevant part:

> **THIS COURT REQUESTS** the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.
>
> Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and Nexii Business Solutions Inc. is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to

Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.

Initial CCAA Order, ¶¶ 55 – 56.

28. In addition to the foregoing, the Initial CCAA Order provides for the appointment of KSV Restructuring Inc. as monitor (in such capacity, the "Monitor") and the enhancement of the Monitor's powers; the stay of proceedings against the Debtors and the Omicron Entities;[5] the maintenance of the Cash Management System; the approval of the term sheet the Debtors entered into with the Senior Secured Lenders dated January 9, 2024 (the "Interim Facility Term Sheet"); the approval of the initial authorized advance of up to $750,000 in the Interim Facility Term Sheet; the approval of an Administration Charge (in first place) to secure obligations to Debtors' counsel, the Monitor, and the Monitor's counsel; and approval of a Directors' Charge (in third place) to secure the Debtors' indemnity obligations to directors and officers for liabilities that they might accrue by virtue of holding those positions after the filing date.

29. Following entry of the Initial CCAA Order, the Debtors will seek entry by the Canadian Court of an amended and restated initial order (the "Amended and Restated Initial CCAA Order") approximately ten days from the date of entry of the Initial CCAA Order.

30. I believe recognition of the CCAA Proceedings will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the CCAA Proceedings under the supervision of the Canadian Court.

---

[5] Because the Omicron Entities have no assets or operations in the United States, the Debtors do not seek stay relief in these Chapter 15 Cases with respect thereto.

DE:4884-5022-8636.3 60009.00001

## V. APPOINTMENT AS FOREIGN REPRESENTATIVE AND FILING OF THE VERIFIED PETITION

31. On January 9, 2024, the Board of Directors of NBSI (the "Board") authorized NBSI to file the Verified Petition seeking recognition of the CCAA Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. Copies of the applicable resolutions are attached as Exhibit B to the Verified Petition.

32. On January 11, 2024, the Canadian Court appointed NBSI as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code for purposes of the CCAA Proceedings.

33. It is my understanding that for these reasons, NBSI satisfies the definition of a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

34. Of the four Debtors, one is incorporated in Delaware, and the Debtors otherwise have property in Delaware in the form of corporation stock formed in Delaware, a retainer in counsel's Delaware trust account, or have affiliates whose Chapter 15 Cases are pending in this district.

35. Therefore, on the Petition Date, NBSI filed the Verified Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing these Chapter 15 Cases in the District of Delaware, seeking recognition of the CCAA Proceedings as "foreign main proceedings," as such term is defined in section 1502(4) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the CCAA Proceedings. I have been informed that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign main proceeding" if such foreign proceeding is a "foreign proceeding" pending in a country where the

debtor has "the center of its main interests." *See* 11 U.S.C. § 1517(b)(1).

36. I have been informed that the CCAA Proceedings are "foreign proceedings" as they are a collective judicial proceeding authorized and supervised by the Canadian Court under the CCAA and pursuant to the Initial CCAA Order. It is my understanding that for these reasons, the CCAA Proceedings qualify as "foreign proceedings" as that term is defined in Section 101(23) of the Bankruptcy Code. In compliance with Section 1515(b) of the Bankruptcy Code, a certified copy of the Initial CCAA Order, which commenced the CCAA Proceedings, is attached to the Provisional Relief Motion as <u>Exhibit 1</u>.

37. In addition, I believe that each of the Debtors has their center of main interests, as such term is defined in section 1502(4) of the Bankruptcy Code, in Vancouver, British Columbia, Canada. The Debtors' parent company, NBSI, is a Canadian corporation incorporated in British Columbia that has a 100 percent direct ownership interest in the remaining Debtors. Additionally, the Debtors are an integrated, complex enterprise, and the Debtors' administrative, support, and other functions are performed on a centralized basis and managed in Canada, namely:

    a. the Debtors' operations are overseen by and report to the Chief Executive Officer, located at the Nexii Group's Vancouver Headquarters;

    b. the Debtors' senior management team has historically been located in Vancouver, British Columbia, Canada and, as of the Petition Date, I, as Acting Chief Executive Officer, am located in Vancouver, British Columbia, Canada;

    c. all creative, strategic, and key operating decisions and key policy decisions are made by and/or subject to approval from Nexii's senior management located in Vancouver, British Columbia, Canada;

    d. key human resources decisions pertaining to, *inter alia*, payroll budgets and augmentation or reduction of employee headcount as per the approved budget, are subject to the approval of the Debtors' senior management located in Vancouver, British Columbia, Canada;

  e. key accounting decisions and all plans, budgets, and financial projections are subject to the approval of the Debtors' senior management located in Vancouver, British Columbia, Canada;

  f. planning, budgeting, management of tax, treasury, and cash management functions, and preparation of financial projections for the Debtors is done from Vancouver, British Columbia, Canada;

  g. all material and/or long-term contracts and expenses are subject to the approval of senior management located in Vancouver, British Columbia, Canada;

  h. all of Nexii's contracts are with NBSI and are managed through the Vancouver Headquarters;

  i. marketing and business development initiatives are overseen from the headquarters in Vancouver, British Columbia, Canada;

  j. corporate governance and regulatory compliance for the Debtors is overseen from its management team located in Vancouver, British Columbia, Canada;

  k. meetings for management and senior staff of the Debtors, including board meetings, are regularly held in Vancouver, British Columbia, Canada; and

  l. senior management and all sales, manufacturing, and operations staff report to their respective senior executives, who, ultimately, report to NBSI's Acting Chief Executive Officer, who is based in Vancouver, British Columbia, Canada.

38. Based on these facts, I believe that recognition of the CCAA Proceedings as foreign main proceedings is warranted.

39. I also believe recognition of NBSI as the Debtors' "foreign representative" and recognition of the CCAA Proceedings as "foreign main proceedings" are consistent with the purpose of chapter 15 and will allow the Debtors to restructure in the most efficient manner without jeopardizing the creditors' rights.

40. The Debtors are affiliates of each other and each of their cases were filed on the Petition Date in this court (the "<u>Bankruptcy Court</u>").  Accordingly, I believe that joint

administration of these Chapter 15 Cases for procedural purposes only, as well as permitting the filing of consolidated lists of the information required by Bankruptcy Rule 1007(a)(4), will be an administrative convenience for the Bankruptcy Court, the court clerk's office, and interested parties.

41. Further, I believe that noticing procedures are appropriate in light of the voluminous amount of creditors, potential creditors, and other parties of interest, all of whom need to be provided with, among other things, notice of the entry of the provisional order, the proposed final order, the recognition objection deadline, and the recognition hearing. The Foreign Representative has prepared a form of notice advising of these and related matters (the "Notice of Recognition Hearing"), a copy of which is annexed to the Notice Procedures Motion. Under the facts and circumstances of the Debtors' Chapter 15 Cases, I submit that service of the Recognition Hearing Notice in the manner proposed in the Notice Procedures Motion will provide those parties identified as the Notice Parties in the Notice Procedures Motion with due and sufficient notice of the relief requested in the Recognition and Relief Motion and associated objection deadline and hearing dates.

42. Also, for the reasons set forth in the Verified Petition, I submit that recognition of the CCAA Proceedings is necessary and appropriate for the benefit of the Debtors, their creditors, and other parties in interest.

43. In accordance with the foregoing, I present the following consolidated statements for the Debtors as a whole.

## VI. STATEMENT PURSUANT TO SECTION 1515 OF THE BANKRUPTCY CODE.

44. I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

   a. A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

   b. A petition for recognition shall be accompanied by—
      i. a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
      ii. a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
      iii. in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

   c. A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

45. Pursuant to section 1515(b) of the Bankruptcy Code, the Initial CCAA Order, in which the Canadian Court appointed the Foreign Representative, is attached to the Provisional Relief Motion as <u>Exhibit 1</u>. The Canadian Court issued the Initial CCAA Order appointing NBSI as the Foreign Representative, authorizing NBSI to file the Verified Petition, and authorizing NBSI to commence these Chapter 15 Cases.

46. Pursuant to section 1515(c) of the Bankruptcy Code, I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, and I believe the CCAA Proceedings are "foreign proceedings" as defined therein. I am aware of no other foreign proceedings with respect to the Debtors.

## VII. DISCLOSURE PURSUANT TO BANKRUPTCY RULE 1007(A)(4).

47. I am informed that Bankruptcy Rule 1007(a)(4) provides, as follows:

> In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

48. I am further informed that Bankruptcy Rule 7007.1 provides in pertinent part that a corporate ownership statement:

> . . . identif[y] any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of the corporation's equity interests, or states that there are no entities to report under this subdivision.

### A. Corporate Ownership Statement.

49. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(A), the following is a corporate ownership statement of the Debtors, which identifies any corporation that directly or indirectly owns 10% or more of any class of the Debtors' equity interests:

50. NBSI is the ultimate parent company and direct shareholder of the other Debtors. Although NBSI is not publicly traded, its shares are widely held.

51. No corporate entities own 10% or more of a class of NBSI's equity interests.[6]

---

[6] According to the Debtors' books and records, as of the Petition Date, Stephen Sidwell holds approximately 29.227% of NBSI's common stock, Michael Dombowsky holds 13.366% of NBSI's common stock, and Benedict Dombowsky and Shelly Dombowsky jointly hold approximately 13.040% of NBSI's common stock. According to the Debtors' books and records, the foregoing individuals' holdings are administered through Canaccord Genuity Corporation.

B. **List of Administrators.**

52. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), the Debtors, as directed by their Board and the Foreign Representative, shall maintain control of and be authorized to administer the CCAA Proceedings. The service address for all of the Debtors in these Chapter 15 Cases is: 1455 West Georgia Street, #200, Vancouver, British Columbia V6G 2T3. I am aware of no other persons or bodies authorized to administer the CCAA Proceedings on behalf of the Debtors.

C. **Provisional Relief.**

53. Through the Provisional Relief Motion, provisional relief is sought with respect to each of the Debtors against the following parties: (a) the Senior Secured Lenders; (b) counterparties to certain of the Debtors' executory contracts and unexpired leases; (c) litigation counterparties; and (d) other creditors, as set forth on the *Consolidated Verified List Pursuant to Fed. R. Bankr. P. 1007(a)(4), 1008, and 2002(q)* appended to each Voluntary Petition.

D. **Parties to Litigation Pending.**

54. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), the Debtors have attached a list of all parties to litigation pending in the United States in which the Debtors are a party at the time of the commencement of the Chapter 15 Cases as Exhibit C to the Verified Petition.

VIII. **STATEMENT IN SUPPORT OF PROVISIONAL RELIEF MOTION.**

55. NBSI commenced these Chapter 15 Cases in order to provide the Debtors with the breathing room and stability necessary to implement their restructuring, including by

seeking certain provisional relief between the Petition Date and the Bankruptcy Court's entry of the proposed order recognizing the CCAA Proceedings. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of sections 361, 362, and 365(e) of the Bankruptcy Code to these Chapter 15 Cases. While the Debtors received no-default provision protection pursuant to the Initial CCAA Order, the Debtors may be exposed to potentially adverse action in the United States by certain creditors and other parties in interest (including counterparties to the Debtors' contracts) who may disregard the stay imposed by the Initial CCAA Order.

56. Additionally, the Debtors' commencement of the CCAA Proceedings and these Chapter 15 Cases are, or may be asserted to be, triggers, events of default, and subsequent cross-default under certain of the Debtors' unexpired leases and executory contracts. Further, certain of the Debtors' executory contracts and unexpired leases contain provisions permitting termination upon the Debtors' filing of a case under any section or chapter of the Bankruptcy Code. The relief requested by the Debtors is required to prevent individual creditors or contract counterparties acting to frustrate the purpose of the CCAA Proceedings by disregarding the Initial CCAA Order, the foremost of which is the fair and efficient administration of the CCAA Proceedings and Sale Process to maximize the value for all creditors.

57. Accordingly, I believe that the provisional relief requested in the Provisional Relief Motion is necessary and appropriate under the circumstances.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 11th day of January, 2024

Vancouver, British Columbia

                                              _____
                                              William Tucker (Jan 10, 2024 19:46 PST)

William Tucker, in his capacity as Acting Chief Executive Officer of Nexii Building Solutions, Inc., the Foreign Representative

DE:4884-5022-8636.1 60009.00001