**Exhibit A**

**Proposed Order**

LA:4864-9999-4777.1 60009.00001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 15 |
| NEXII BUILDING SOLUTIONS INC., et al.,[1] | Case No. 24-10026 |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**ORDER GRANTING PROVISIONAL RELIEF
PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE**

Upon the motion for certain provisional and injunctive relief (the "Motion") filed by Nexii

Building Solutions Inc. as the authorized foreign representative (the "Foreign Representative") of

the above-captioned debtors (collectively, the "Debtors") in connection with the Debtors'

reorganization proceedings under Canadian law currently pending (the "CCAA Proceedings"); and

upon this Court's review and consideration of the Motion, Verified Petition, Tucker Declaration, and

Jackson Declaration;[2] this Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501; consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P);

venue being proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3); appropriate, sufficient,

and timely notice of the filing of the Motion and the hearing thereon having been given pursuant to

rules 1011(b) and 2002(q) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

and upon the record established at such hearing; it appearing that the relief requested in the Motion is

---

[1]     The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's
unique identifier, are Nexii Building Solutions Inc. (0911), Nexii Construction Inc. (1333), NBS IP Inc. (9930),
and Nexii Holdings Inc. (5873).  The Debtors' service address for purposes of these Chapter 15 Cases is 1455
West Georgia Street, #200, Vancouver, British Columbia V6G 2T3.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

necessary and beneficial to the Debtors; and no objections or other responses having been filed that have not been overruled, withdrawn or otherwise resolved; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

1. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. There is a substantial likelihood that the Foreign Representative will successfully demonstrate that the CCAA Proceedings constitute "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

3. The commencement or continuation of any action or proceeding in the United States against the Debtors should be enjoined pursuant to sections 105(a) and 1519 of the Bankruptcy Code to permit the expeditious and economical administration of the CCAA Proceedings, and such relief will either (a) not cause an undue hardship to other parties in interest or (b) any hardship to parties is outweighed by the benefits of the relief requested.

4. Consistent with findings by the Canadian Court and relief granted under the Initial CCAA Order and the Amended and Restated Initial CCAA Order, unless a preliminary injunction is issued with respect to the Debtors, there is a material risk that the Debtors' creditors or other parties-in-interest in the United States could use the CCAA Proceedings and these Chapter 15 Cases as a

pretext to exercise certain remedies or to terminate executory contracts or unexpired leases with respect to the Debtors.

5.      Such acts could (a) interfere with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, (b) interfere with and cause harm to the Debtors' efforts to administer the CCAA Proceedings, (c) interfere with the Debtors' operations, and (d) undermine the Debtors' efforts to achieve an equitable result for the benefit of all of the Debtors' creditors. Accordingly, there is a material risk that the Debtors may suffer immediate and irreparable injury, and it is therefore necessary that the Court enter this order (this "Order").

6.      The Foreign Representative has demonstrated that, in the interest of comity, the purpose of chapter 15 is carried out by granting recognition and giving effect to the Initial CCAA Order and, upon its entry by the Canadian Court, the Amended and Restated Initial CCAA Order.

7.      The interest of the public will be served by this Court's entry of this Order.

8.      The Foreign Representative and the Debtors are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:**

9.      Beginning on the date of this Order and continuing until the date of the entry of an order of this Court recognizing the CCAA Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code and the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code (unless otherwise extended pursuant to section 1519(b) of the Bankruptcy Code), with respect to the Debtors:

LA:4864-9999-4777.1 60009.00001

a. the Foreign Representative shall be the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States.

b. section 361 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

c. section 362 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States. For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

  i. the commencement or continuation, including the issuance or employment of process of, any judicial, administrative, or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative, or other judgment, assessment, order, lien, or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets, located in the United States except as authorized by the Foreign Representative in writing;

  ii. the creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering, or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative;

  iii. any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases; and

  iv. the setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases against any claim against the Debtors.

d. for counterparties to certain of the Debtors' executory contracts and unexpired leases, section 365(e) of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

e. the Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510

LA:4864-9999-4777.1 60009.00001

of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

    f.    notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

10.    The Foreign Representative, in connection with its appointment as the "foreign representative" in these cases, and the Debtors, are hereby granted the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

11.    The Initial CCAA Order, attached hereto as **<u>Exhibit 1</u>**, is hereby given full force and effect on a provisional basis, including, without limitation, the sections of the Initial CCAA Order (a) staying the commencement or continuation of any actions against the Debtors and their assets, (b) granting the Directors' Charge and Administration Charge, and (c) declaring that British Columbia is the "*center of main interest*" of the Debtors, in each case to the same extent provided in the Initial CCAA Order.

12.    Upon entry of the Amended and Restated Initial CCAA Order by the Canadian Court in the CCAA Proceedings superseding the Initial CCAA Order, such entered Amended and Restated Initial CCAA Order (which Amended and Restated Initial CCAA Order as approved by the Canadian Court in the CCAA Proceedings shall be filed on the docket of these Chapter 15 Cases and served on the Core Notice Parties as soon as practicable after its entry), shall be given full force and effect on a provisional basis, including, without limitation, the provisions already included in the Initial CCAA Order.

LA:4864-9999-4777.1 60009.00001

13.     Pursuant to Bankruptcy Rule 7065, the security provisions of rule 65(c) of the Federal Rules of Civil Procedure are waived.

14.     Service in accordance with this Order shall be deemed good and sufficient service and adequate notice for all purposes. The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or Local Rules.

15.     The banks and financial institutions with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor, and pay any and all such checks, drafts, wires, and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Debtors' bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtors, as the case may be.

16.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

17.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

6

## EXHIBIT 1

## Initial CCAA Order

LA:4864-9999-4777.1 60009.00001



SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JAN 1 1 2024

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA
S E A L
VANCOUVER
REGISTRY

No. S240195
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, RSC 1985, c C-36, as amended

and

IN THE MATTER OF NEXII BUILDING SOLUTIONS INC.,
NEXII CONSTRUCTION INC, NBS IP INC. and NEXII HOLDINGS INC.

PETITIONERS

## ORDER MADE AFTER APPLICATION

BEFORE THE HONOURABLE    )
JUSTICE STEPHENS          )     JANUARY 11, 2024
                        )

**ON THE APPLICATION** of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 11th day of January, 2024 (the "**Order Date**"); **AND ON HEARING** Lisa Hiebert and Kibben Jackson, counsel for the Petitioners, and those other counsel listed on **Schedule "A"** hereto; **AND UPON READING** the application material filed, including the First Affidavit of William Tucker sworn January 10, 2024 (the "**Tucker Affidavit**"), and the consent of KSV Restructuring Inc. ("**KSV**") to act as Monitor; **AND UPON BEING ADVISED** that the secured creditors who are likely to be affected by the charges created herein were given notice; **AND PURSUANT TO** the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the *Supreme Court Civil Rules* and the inherent jurisdiction of this Honourable Court;

# THIS COURT ORDERS AND DECLARES THAT:

1.    The time for service of the Petition and materials filed in support of the application for this Order (collectively, the **"Application"**) is hereby abridged such that service of the Application is deemed to be timely and sufficient and the Application is properly returnable today.

## JURISDICTION

2.    Each of the Petitioners is a company to which the CCAA applies. Although not Petitioners, Omicron Canada Inc., Omicron Construction Management Ltd., Omicron Consulting Inc., Grant & Sinclair Architects Ltd., Omicron Interiors Ltd. and Omicron Construction Ltd. (collectively, the **"Omicron Entities"**) shall enjoy certain protections as set out in this Order.

## SUBSEQUENT HEARING DATE

3.    The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 15 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at 800 Smithe Street, Vancouver, British Columbia at ~~■~~.m. on ~~January 12~~ the ~~■■■ day of January~~, 2024 or such other date as this Court may order.

## POSSESSION OF PROPERTY AND OPERATIONS

4.    Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the **"Property"**) and continue to carry on their business (the **"Business"**) in the ordinary course, or as otherwise agreed by the Monitor and the Interim Lenders (as defined below), and in a manner consistent with the preservation of the Business and the Property. The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, **"Assistants"**) currently

retained or employed by them, with liberty to retain such further Assistants as the Petitioners deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

5.    The Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the Tucker Affidavit or, with the prior written consent of the Interim Lenders and the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**"), and any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, under any plan of compromise or arrangement (the "**Plan**") with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.    The Petitioners shall be entitled but not required to pay the following expenses whether incurred prior to, on, or after the date of this Order, subject to compliance with the Cash Flow Projections (as defined in the Term Sheet, defined below):

(a)    all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

(b)    with the consent of the Monitor, amounts owing for goods and services actually supplied to the Petitioners prior to the date of this Order by third party suppliers,

if such third party is critical to the Business and ongoing operations of the Petitioners; and

(c)    the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

        (i)    these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

        (ii)    any litigation in which the Petitioners are named as parties or are otherwise involved, whether commenced before or after the Order Date; and

        (iii)    any related corporate matters.

7.    Except as otherwise provided herein and subject to the terms of the Term Sheet and Definitive Documents, as each such capitalized term is defined below, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)    all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure shall be approved by the Monitor;

(b)    all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at

the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c) fees and disbursements of the kind referred to in paragraph 6(c) which may be incurred after the Order Date.

8. The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b) all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

9. Until such time as a real property lease is disclaimed in accordance with the CCAA or subject to further Order of this Court, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease, but, for greater certainty, excluding accelerated rent or penalties, fees or other charges arising as a result

of the insolvency of the Petitioners or the making of this Order) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

10.    Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

   (a)    to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of their creditors as of the Order Date except as authorized by this Order;

   (b)    to make no payments in respect of any financing leases which create security interests;

   (c)    to grant no security interests, trusts, mortgages, liens, charges or encumbrances upon or in respect of any of the Property, nor become guarantors or sureties, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

   (d)    to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

   (e)    to not incur liabilities except in the ordinary course of Business.

**RESTRUCTURING**

11.    Each of the Petitioners shall, subject to such requirements as are imposed by the CCAA, this Order, and such covenants as may be contained in the Definitive Documents, have the right

(but not the obligation) to operate the Business in the ordinary course pending the return hearing on the Comeback Date (as defined below), subject to disclaimers that may be issued pursuant to section 32 of the CCAA.

12.     Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), the Petitioners shall have the right to:

    (a)    permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $500,000 in any one transaction or $1,500,000 in the aggregate;

    (b)    terminate the employment of such of their employees or temporarily lay off such employees as they deem appropriate; and

    (c)    pursue all avenues of refinancing for its Business or Property, in whole or in part; all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.     The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any dispute concerning

such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.     If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioner of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

15.     Until and including Monday, January 22, 2024, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners, the Omicron Entities or the Monitor, or affecting the Business or the Property (including that of the Omicron Entities), shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners, the Omicron Entities or affecting the Business or the Property (including that of the Omicron Entities) are hereby stayed and suspended pending further Order of this Court.

16.     During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners, the Omicron Entities or the Monitor, or affecting the Business or the Property (including that of the Omicron

Entities), are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

17.     Nothing in this Order, including paragraphs 15 and 16, shall: (i) empower the Petitioners or the Omicron Entities to carry on any business which they are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

18.     The granting of this Order, the Application and any affidavits and other materials filed in support of the Application shall not, in in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

## NO INTERFERENCE WITH RIGHTS

19.     During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract or agreement, licence or permit in favour of or held by the Petitioners or the Omicron Entities except with the written consent of the Petitioners, or the Omicron Entities, as applicable, and the Monitor or leave of this Court.

## CONTINUATION OF SERVICES

20.     During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking

services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioners are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

21.    Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

22.    During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall

be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

23.    The Petitioners shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

24.    The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the **"Directors' Charge"**) on the Property, which charge shall not exceed an aggregate amount of $1,040,000, as security for the indemnity provided in paragraph 23 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 42 and 44 herein.

25.    Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 23 of this Order.

## APPOINTMENT OF MONITOR

26.    KSV is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers

and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

27.     The Monitor, in addition to its prescribed rights and obligations under the CCAA and applicable law, and without altering in any way the obligations of the Petitioners in this CCAA proceeding, is hereby empowered, but not required, to:

    (a)     exercise any powers which may be properly exercised by a board of directors or any officers of the Petitioners to cause the Petitioners, through the Petitioners' Assistants (then engaged, if any), to, without limitation:

        (i)     take any and all actions and steps, and execute all agreements, documents and writings, on behalf of, and in the name of, the Petitioners in order to facilitate the performance of any of the Petitioners' powers or obligations (collectively, the **"Petitioners' Powers & Obligations"**);

        (ii)     engage, retain, or terminate the services of any officer, employee, consultant, agent, representative, advisor, or other persons or entities, as the Monitor deems necessary or appropriate to assist with the exercise of the Monitor's powers and duties and/or the Petitioners' Powers & Obligations. For greater certainty, any such officer, employee, consultant, agent, representative, advisor, or other persons or entities engaged or retained pursuant to this paragraph shall thereafter be deemed to be Assistants under this Order;

        (iii)     perform such other functions or duties, and enter into any agreements or incur any obligations, as the Monitor considers necessary or desirable in order to facilitate or assist the winding-down or liquidation of the Petitioner, the realization and/or sale of all of the Petitioners' Property, the distribution of any net proceeds of the Property (the **"Proceeds"**), or any other related activities, including, without limitation, in connection with terminating this CCAA proceeding;

(iv)     exercise any rights of the Petitioners;

(v)      grant the Monitor access to all books and records that are the property of the Petitioners or that are in the Petitioners' possession or control (the "**Books and Records**");

(vi)     initiate, prosecute, and/or continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Petitioners, the Property, or the Proceeds, and, subject to further Order of this Court, to settle or compromise any such proceedings. The authority hereby conveyed shall extend to such appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding;

(vii)    deal with any taxing or regulatory authority, including to execute any appointment or authorization form on behalf of the Petitioners that any taxing or regulatory authority may require, in order to confirm the appointment of an authorized representative of the Petitioners (which may be a representative of the Monitor) for such purposes;

(viii)   engage, deal, communicate, negotiate and, with further Order of this Court, settle with any creditor or other stakeholder of the Petitioners (including any governmental authority);

(ix)     claim any and all insurance refunds or tax refunds to which the Petitioners is entitled on behalf of the Petitioners; and

(x)      file, or take such actions necessary for the preparation and filing of, on behalf of and in the name of the Petitioners, (i) any tax returns, and (ii) the Petitioners' employee-related remittances, T4 statements and records of employments for the Petitioners' former employees, in either case, based solely upon the information in the Applicant's Books and Records and on

the basis that the Monitor shall incur no liability or obligation to any person with respect to such returns, remittances, statements, records or other documents;

(b)     monitor the Petitioners' receipts and disbursements;

(c)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(d)     assist the Petitioners, to the extent required by the Petitioners, in their dissemination to the Interim Lenders (as hereinafter defined) and their counsel on a monthly basis of financial and other information as agreed to between the Petitioners and the Interim Lenders, which may be used in these proceedings including reporting on a basis to be agreed with the Interim Lenders;

(e)     advise the Petitioners in its preparation of the Petitioners' cash flow statements and reporting required by the Interim Lenders, which information shall be reviewed with the Monitor and delivered to the Interim Lenders and its counsel on a periodic basis, but not less than monthly, or as otherwise agreed to by the Interim Lenders;

(f)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(g)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(h)     perform such other duties as are required by this Order or by this Court from time to time; and

(i)     take any steps reasonably incidental to the exercise by the Monitor of the powers listed above or the performance of any statutory obligations

(collectively, the "**Monitor's Powers**").

28.     Notwithstanding anything contained in this Order, where the Monitor exercises any of the Monitor's Powers, it shall be the sole Person authorized to exercise such powers, to the exclusion of all other Persons, and no director or officer of the Petitioners shall incur any liability for any decisions or actions of the Monitor acting under such authority.

29.     Notwithstanding anything contained in this Order, the Monitor shall not take possession of the Property or Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

30.     Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not,

as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

31.     The Monitor shall provide any creditor of the Petitioners and the Interim Lenders with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.   The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

32.     In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part.  Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

## ADMINISTRATION CHARGE

33.     The Monitor, counsel to the Monitor and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis.

34.     The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

35.    The Monitor, counsel to the Monitor and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring. The Administration Charge shall have the priority set out in paragraphs 42 and 44 hereof.

**INTERIM FINANCING**

36.    The Petitioners are hereby authorized and empowered to obtain and borrow under an interim credit facility from Powerscourt Investments XXV, LP, Trinity Capital Inc. and Horizon Technology Finance Corporation (collectively, the "**Interim Lenders**") in order to finance the Petitioners' working capital requirements and other general corporate purposes and capital expenditures, provided that borrowings under such interim credit facility shall not exceed US$750,000 under this Order unless permitted by further Order of this Court.

37.    Such interim credit facility shall be on the terms and subject to the conditions set forth in the debtor-in-possession term sheet between the Petitioners and the Interim Lenders dated as of January 9, 2024 (the "**Term Sheet**") attached as Exhibit K to the Tucker Affidavit.

38.    The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (with the Term Sheet, collectively the "**Definitive Documents**"), as are contemplated by the Term Sheet or as may be reasonably required by the Interim Lenders pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the Interim Lenders under and pursuant to the Term Sheet and the Definitive Documents (collectively, the "**Interim Financing Obligations**") as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

39.     The Interim Lenders shall be entitled to the benefit of and is hereby granted a charge (the **"Interim Lenders' Charge"**) on the Property as security for the Interim Financing Obligations, which Interim Lenders' Charge shall be in the aggregate amount of the Interim Financing Obligations outstanding at any given time under the Definitive Documents. The Interim Lenders' Charge shall not secure an obligation that exists before this Order is made. The Interim Lenders' Charge shall have the priority set out in paragraphs 42 and 44 hereof.

40.     Notwithstanding any other provision of this Order:

(a)     the Interim Lenders may take such steps from time to time as they may deem necessary or appropriate to file, register, record or perfect the Interim Lenders' Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under any of the Definitive Documents or the Interim Lenders' Charge, the Interim Lenders, upon three (3) business days' notice to the Petitioners and the Monitor, may exercise any and all of their rights and remedies against the Petitioners or the Property under or pursuant to the Term Sheet, Definitive Documents and the Interim Lenders' Charge, including without limitation, to cease making advances to the Petitioners and set off and/or consolidate any amounts owing by the Interim Lenders to the Petitioners against the obligations of the Petitioners to the Interim Lenders under the Term Sheet, the Definitive Documents or the Interim Lenders' Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Petitioners and for the appointment of a trustee in bankruptcy of the Petitioners; and

(c)     the foregoing rights and remedies of the Interim Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioners or the Property.

41.     The Interim Lenders, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the **"BIA"**), with respect to any advances made under the Definitive Documents.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

42.     The priorities of the Administration Charge, the Directors' Charge and the Interim Lenders' Charge, as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $500,000);
>
> Second – Interim Lenders' Charge (to the maximum amount of the Interim Financing Obligations at the relevant time); and
>
> Third – Directors' Charge (to the maximum amount of $1,040,000).

43.     Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge, the Interim Lenders' Charge and the Directors' Charge (collectively, the **"Charges"**) shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

44.     Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, **"Encumbrances"**), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA and any Person with a properly perfected purchase money security interest under the *Personal Property Security Act* (British Columbia) or such other applicable legislation that has not been served with notice of this Application.

45.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor, the Interim Lenders and the beneficiaries of the Administration Charge and the Director's Charge.

46.     The Administration Charge, the Director's Charge,  the Term Sheet, the Definitive Documents and the Interim Lenders' Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the Interim Lenders shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by the Petitioners of any Agreement to which they are a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c)     the payments made by the Petitioners pursuant to this Order, the Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not

constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

47.     Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

## SERVICE AND NOTICE

48.     The Monitor shall (i) without delay, publish in *The Globe and Mail* (National Edition) a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder; provided that the Monitor shall not be required to make the names and addresses of individuals who are creditors publicly available unless otherwise ordered by this Court.

49.     The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission (including by e-mail) to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

50.     Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be

maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.ksvadvisory.com/experience/case/Nexii (the "**Case Website**").

51.     Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on the Case Website.

52.     Notwithstanding paragraphs 49 and 51 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

53.     The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of its powers and duties hereunder.

54.     Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

55.     **THIS COURT REQUESTS** the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

56.    Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and Nexii ~~Business~~ Building Solutions Inc. is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.

57.    The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if the Petitioners determine that such a filing is appropriate.

58.    The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as they deem advisable within the time limited for Persons to file and serve Responses to the Petition.

59.    Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

60.    Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order, provided, however, that the Chargees shall be entitled to rely on this Order as granted and on the Charges and priorities set forth in paragraphs 42 and 44 hereof with respect to any fees, expenses and disbursements incurred, as applicable, until the date this Order may be amended, varied or stayed.

61.    Endorsement of this Order by counsel appearing on this application, other than counsel for the Petitioners, is hereby dispensed with.

62.   This Order and all its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

63.   Where the relief sought is not opposed or contested, leave is granted for counsel to the Interim Lenders to appear at future hearings in this matter remotely by video.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____

Signature of Lisa Hiebert
☐ Party   ☑ Lawyer for the Petitioners

BY THE COURT

_____

REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:    JAN 1 1 2024

_____

Authorized Signing Officer

Kade Chapman

### Schedule "A"

### Appearance List

| Counsel Name | Party Represented |
|---|---|
| Sean Zweig and Andrew Froh | The proposed Monitor, KSV Restructuring Inc. |
| Kyle Plunkett | Powerscourt Investments XXV, LP, Powerscourt Investments XXV Trust, Trinity Capital Inc., Horizon Technology Finance Corporation, Horizon Credit II LLC, Horizon Funding I LLC and Horizon Funding Trust 2022-1 |
| | |
| | |
| | |
| | |
| | |