## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| NEXII BUILDING SOLUTIONS INC., et al.,[1] | Case No. 24-10026 (JKS) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

### FOREIGN REPRESENTATIVE'S MOTION FOR
### ENTRY OF ORDER (I) RECOGNIZING AND ENFORCING
### THE ANCILLARY ORDER, (II) APPROVING THE PROCEDURE GOVERNING
### CLOSING OF CHAPTER 15 CASES AND (III) GRANTING RELATED RELIEF

Nexii Building Solutions, Inc., in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned foreign debtors (collectively, the "Debtors" or "Nexii"), which are the subject of jointly-administered proceedings (the "CCAA Proceedings") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Supreme Court of British Columbia (the "Canadian Court"), respectfully submits this motion (this "Motion") for the entry of an order, pursuant to sections 105(a), 350, 1507, 1517(d), 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 5009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5009-2 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules"), (i) recognizing and enforcing the Ancillary Order (defined below), (ii) approving the procedure governing closing of these chapter 15 cases (the "Chapter 15 Cases") and (iii) granting related relief. In support of the relief requested herein, the Foreign Representative respectfully represents as follows:

---

[1] The Debtors in these Chapter 15 Cases, along with the last four digits of each Debtor's unique identifier, are Nexii Building Solutions Inc. (0911), Nexii Construction Inc. (1333), NBS IP Inc. (9930), and Nexii Holdings Inc. (5873). The Debtors' service address for purposes of these Chapter 15 Cases is 1455 West Georgia Street, #200, Vancouver, British Columbia V6G 2T3.

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue of these Chapter 15 Cases are proper in this Court pursuant to 28 U.S.C. § 1410.

3.      The statutory bases for the relief requested herein are sections 105(a), 350, 1507, 1517(d), 1520, and 1521 of the Bankruptcy Code, Bankruptcy Rule 5009, and Local Rule 5009-2.

**BACKGROUND**

4.      On January 11, 2024, the Debtors commenced the CCAA Proceedings with the Canadian Court pursuant to sections 9, 11, 11.51, 11.52, and 23 of the CCAA with the goal of pursuing a sale process under the supervision of the Canadian Court.

5.      The key orders entered in the CCAA Proceedings to date include the following: (a) *Initial Order*, entered on January 11, 2024 (the "Initial CCAA Order"); (b) *Amended and Restated Initial Order*, entered on January 22, 2024; and (c) *Sale Process and Origin Engagement Order* (the "Sale Process Order"), entered on January 22, 2024, governing a

sale process in Canada and authorizing the engagement of Origin Merchant Partners ("Origin") as investment banker to advise throughout the sale process.

6.     On January 11, 2024, (the "Petition Date"), the Foreign Representative filed voluntary petitions for relief under chapter 15 of the Bankruptcy Code for each of the Debtors in this Court.  A description of the Debtors' business and the events leading up to the commencement of the CCAA Proceedings and these Chapter 15 Cases is included in the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 7] (the "Tucker Declaration") and the *Declaration of Kibben Jackson in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 8], which are incorporated herein by reference.

7.     On January 17, 2024, the Court entered the *Order Granting Provisional Recognition of the Initial CCAA Order Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 30], giving full force and effect on a provisional basis to the Initial CCAA Order, among other relief.

8.     On February 9, 2024, the Court entered the *Order Granting Petition for (I) Recognition as Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 44] (the "Recognition Order"), granting the Debtors' verified petitions and recognizing the CCAA Proceedings as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code, among other relief.

9.      On June 24, 2024, KSV Restructuring Inc. (the "Monitor"), in its capacity as the Court-appointed Monitor of the Debtors in the CCAA Proceedings, filed its *Notice of Application* (the "Application") for an order approving the asset purchase agreement (the "Purchase Agreement") between the Debtors and Nexiican Holdings Inc. ("Purchaser" or "Nexiican") and Nexii, Inc. (together with Nexiican, the "Purchaser Parties").

10.     The Monitor's *Application* also sought an order (the "Ancillary Order"),[2] among other things, approving the Monitor's conduct, activities, and fees and disbursements (and those of its counsel) in the CCAA Proceeding and the termination of the CCAA Proceedings.  The *Application* included a request to discharge the Monitor and release certain parties, including the Monitor, the Debtors' DIP Lenders, Secured Lenders, counsel to the Monitor, Debtors, and DIP Lenders, their affiliates, partners, employees and agents, and the current and former directors and officers of the Debtors pursuant to the Ancillary Order (the "CCAA Releases").

11.     On June 28, 2024, the Canadian Court entered its *Approval and Vesting Order* (the "Canadian Sale Order") and the Ancillary Order, recognizing and approving: (i) the sale of substantially all of the Debtors' assets (the "Assets") to the Purchaser Parties pursuant to the terms and conditions set forth in the Canadian Sale Order; (ii) the termination of the CCAA Proceedings; and (iii) the CCAA Release.  A copy of the Ancillary Order is attached to the Proposed Order as **Exhibit 1.**

**The CCAA Sale Process**

12.     The sale of the Assets in accordance with the terms and conditions of the Canadian Sale Order represented the culmination of the orderly sale process authorized by the

---

[2]      Capitalized terms not otherwise defined herein shall have their meaning as set forth in the Ancillary Order or the Tucker Declaration, as applicable.

Canadian Court.  Following its engagement, Origin commenced a comprehensive marketing and sale process in Canada under the supervision of the Canadian Court (the "Sale Process").  On January 24, 2024, Origin launched the Sale Process by distributing an interest solicitation letter (the "Teaser") detailing the acquisition opportunity to potential purchasers and investors.  The Teaser was distributed to 188 interested parties, which included Canadian and United States operators in the construction industry, financial groups, and other strategic parties, including certain parties that contacted the Monitor and/or Origin following the commencement of the CCAA Proceedings.

13.     Parties that executed a non-disclosure agreement attached to the Teaser (the "NDA") were provided with access to an online dataroom, which contained historical and projected financial information and other relevant diligence information, such as operational metrics, personnel information, and material contracts and agreements.  In total, 26 interested parties executed an NDA and were provided access to the dataroom, 11 of which were interested in exploring transaction opportunities with the Debtors.[3]

14.     Pursuant to the Sale Process Order, the deadline for interested parties to submit a binding qualified bid, including a 10% purchase price deposit, was March 7, 2024.  As of such date, however, the Debtors did not receive any Qualified Bids that were in a form for which approval could be sought in the CCAA Proceedings.  However, the Debtors, Origin, and the Monitor continued to market the Debtors' assets and engage in discussions with potential purchasers of the Debtors' assets.

---

[3]     The Omicron Entities (as defined in the Tucker Declaration) became petitioners in the CCAA Proceedings subsequent to the Petition Date, but are not Debtors in these Chapter 15 Cases.  The assets of the Omicron Entities, who did not have any assets or operations in the United States, were previously sold in the CCAA Proceedings.

15.     Notwithstanding that Origin spent nearly six (6) months marketing the Debtors' assets, the only qualified bid that was submitted for the Debtors' assets in the Sale Process came from the Purchase Parties.

16.     Pursuant to the Purchase Agreement, the Purchaser Parties are purchasing substantially all of the Debtors' assets (as defined in the Asset Purchase Agreement in greater detail, the "Purchased Assets") in exchange for more than $22,500,000.00 of total consideration, which includes $22,200,000.00 of assumed secured indebtedness, $500,000.00 of cash consideration, and assumption of additional liabilities relating to Resale Warranty Obligations (as defined in the Purchase Agreement) and assumed contracts and leases (collectively, the "Purchase Price").  The Purchase Agreement is attached to the Foreign Representative's *Motion Pursuant to Section 105(a), 363, 365, 1501, 1507, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, for Entry of an Order (I) Recognizing and Enforcing the Approval and Vesting Order, (II) Approving the Sale of Substantially all the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* (the "Sale Recognition Motion"), filed contemporaneously herewith.

### The Ancillary Order

17.     Pursuant to the Ancillary Order, the Canadian Court (i) approved the activities and fees of the Monitor and the Monitor's counsel; (ii) terminated the CCAA Proceedings upon the Monitor's filing of a Monitor's Termination Certificate in the CCAA Proceedings; (iii) discharged the Monitor as of the termination of the CCAA Proceedings; (iv) approved the CCAA Releases; and (v) granted related relief, which included a request of this Court's "aid and recognition" in giving effect to the Ancillary Order.[4]  The CCAA Releases,

---

[4]     Ancillary Order at ¶ 20.

found in paragraphs 13 through 16 of the Ancillary Order, provides that the Released Parties (as

defined in the Ancillary Order) are:

> released and discharged from any and all claims that any person
> may have or be entitled to assert against the Released Parties,
> whether known or unknown, matured or unmatured, foreseen or
> unforeseen, existing or hereafter arising, based in whole or in part
> on any action or omission, transaction, dealing or other occurrence
> existing or taking place on or prior to the date of the filing of the
> Monitor's Termination Certificate in any way relating to or arising
> out of the assets, obligations, business or affairs of the Petitioners
> or in respect of these CCAA Proceedings (the "**Released Claims**"
> and each a "**Released Claim**") and any such Released Claims are
> hereby released, stayed, extinguished and forever barred, with
> prejudice, and the Released Parties shall have no liability in respect
> thereof, provided however that Released Claims shall not include
> any claim arising out of gross negligence or willful misconduct on
> the part of the Released Parties.[5]

The CCAA Releases were, at the request of certain of the Debtors' creditors, limited to provide

that they would not "have any effect on any rights, remedy, suit or proceeding against any

personal indemnitor or guarantor in respect of any indemnity or guarantee made by such Nexii

Directors and Officers in his or her personal capacity."[6]

### **RELIEF REQUESTED**

18.     By this Motion, the Foreign Representative respectfully requests (i) that

the Court enter an order, in substantially the form attached hereto as **Exhibit A** (the "Proposed

Order"), recognizing and enforcing the Ancillary Order; (ii) that, upon the Notice of Full

Administration, attached to this Motion as **Exhibit B**, the Court enter the order attached to this

Motion as **Exhibit C** (the "Proposed Case Closing Order"), closing the Chapter 15 Cases; and

(iii) that the Court grant any other relief that may be necessary and appropriate, including entry

of a final decree after entry of the Proposed Case Closing Order.

---

[5]     Ancillary Order at ¶ 13.
[6]     *Id.* at ¶ 15.

## BASIS FOR RELIEF REQUESTED

**A.    The Court should recognize and give force and effect to the Ancillary Order within the territorial jurisdiction of the United States.**

19.    The Foreign Representative respectfully submits that the Court should recognize and give effect to the Ancillary Order within the territorial jurisdiction in the United States.  Chapter 15 of the Bankruptcy Code empowers "courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objective of the chapter in accordance with comity."[7]  The Court has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity.[8]

20.    Section 1521(a) of the Bankruptcy Code authorizes this Court, "at the request of the foreign representative, [to] grant any appropriate relief"[9] to the Foreign Representative, provided that the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected."[10]  Moreover, the Court may provide "additional assistance" to the Foreign Representative,[11] and may grant recognition of the Ancillary Order so long as recognition is not "manifestly contrary to the public policy of the United States."[12]

21.    Here, the Court may exercise its discretion under sections 1507 and 1521 of the Bankruptcy Code, and consistent with the principles of comity, to recognize and enforce

---

[7]    *In re Rede Energia, S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014 ) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008); *see also In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("chapter 15 maintains—and in some respects enhances—the 'maximum flexibility . . . that section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations") (internal citations omitted), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007).

[8]    *See* 11 U.S.C. §§ 1507 and 1521.

[9]    11 U.S.C. § 1521(a).

[10]    11 U.S.C. § 1522.

[11]    11 U.S.C. § 1507(a).

[12]    11 U.S.C. § 1506.

the Ancillary Order.[13]  The relief requested by the Ancillary Order is consistent with, and not contrary to, the public policy of the United States and the Foreign Representative submits that the Court has the discretion to enter the Proposed Order recognizing and enforcing the Ancillary Order, including the CCAA Releases.

22.    The Foreign Representative is cognizant of the recent decision in *Harrington v. Purdue Pharma L.P.*, __ S. Ct. __, 2024 U.S. LEXIS 2848 (June 27, 2024), in which the Supreme Court of the United States held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."[14] Importantly, the majority in *Purdue* rested its decision on the statutory construction (including the context and history) of section 1123(b)(6) of the Bankruptcy Code,[15] not on any determination that non-consensual third party releases are contrary to the public policy of the United States.[16]

23.    As noted above, section 1506 of the Bankruptcy Code provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."[17] This provision "requires a narrow reading . . . [it] does not create an exception for any action under Chapter 15 that may conflict with public policy, but only an action that is '*manifestly*

---

[13]    *See generally In re ABC Learning Centres Ltd.*, 720 F.3d 301, 306 (3d Cir. 2013) ("Foreign Representatives can access U.S. courts to request enforcement of orders of the foreign proceeding and to stay actions against foreign debtors' property in the United States.").

[14]    2024 U.S. LEXIS 2848, at *32.

[15]    *Id.*, at *28 ("If text and context supply two strikes against the plan proponents and the dissent's construction of § 1123(b)(6), history offers a third.").

[16]    *Cf. id.*, at *31 ("Both sides of this policy debate may have their points.  But, in the end, we are the wrong audience for them.").

[17]    11 U.S.C. § 1506.

contrary.'"[18]  The public policy exception embodied in section 1506 is only implicated by actions that offend "the most fundamental policies of the United States"[19] and "invoked only 'under exceptional circumstances concerning matters of fundamental importance [to the United States].'"[20]

24.    As the United States Court of Appeals for the Third Circuit has held, the section 1506 public policy exception only applies "'where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections' or where recognition 'would impinge severely a U.S. constitutional or statutory right.'"[21]  "The mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception."[22]

25.    The CCAA Releases do not implicate section 1506 of the Bankruptcy Code and, accordingly, should be enforced through the recognition and enforcement of the Ancillary Order pursuant to sections 1507 and 1521 of the Bankruptcy Code.  Indeed, in pre-*Purdue* cases, bankruptcy courts have found that "section 1506 did not bar enforcement of the third party releases because the Canadian court had statutory authority to grant such relief, the question of the Canadian court's jurisdiction had been fully litigated and carefully considered in Canada, including on appeal, and 'the procedures used in Canada meet our fundamental standards of fairness,'"[23] even though such releases "arguably could not be granted in a U.S.

---

[18]    *Morning Mist Holdings Ltd. v. Krys* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127, 139 (2d Cir. 2013) (emphasis in original).

[19]    *Fairfield Sentry*, 714 F.3d at 139 (quoting H.R. Rep. No. 109-31, pt. 1, at 109 (2005)); *see also ABC Learning*, 728 F.3d at 309.

[20]    *Fairfield Sentry*, 714 F.3d at 139 (quoting Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency at ¶ 89).

[21]    *ABC Learning*, 728 F.3d at 309 (quoting *In re Qimonda AG Bankr. Litig.*, 433 B.R. 537, 570 (E.D. Va. 2010)).

[22]    *Qimonda*, 433 B.R. at 570.

[23]    *In re Toft*, 453 B.R. 186, 194 (Bankr. S.D.N.Y. 2011) (quoting *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010)).

bankruptcy proceeding."[24]   So too here; the CCAA Releases, which were granted by the Canadian Court in a collective proceeding after notice and a hearing, are not manifestly contrary to public policy and accordingly should be applied through the recognition and enforcement of the Ancillary Order.

**B.    The case closing procedure should be approved.**

26.    Upon entry of an order recognizing and enforcing the Sale Recognition Motion and the Proposed Order by this Court, and with the closing of the transaction contemplated by the Canadian Sale Order and the pending termination of the CCAA Proceedings, the Foreign Representative has determined that there will no longer be a reason for these Chapter 15 Cases to remain open.

27.    Section 1517(d) of the Bankruptcy Code provides that a case under chapter 15 of the Bankruptcy Code may be closed in the manner prescribed under section 350 of the Bankruptcy Code,[25] which, in turn, provides that a case shall be closed "[a]fter an estate is fully administered."[26]   Local Rule 5009-2 provides, in relevant part, that:

> Upon written motion, a foreign representative in a proceeding recognized under § 1517 of the Code, may seek the entry of a final decree when the purpose of the representative's appearance in the Court is completed.  Such motion shall describe the nature and results of the representative's activities in the Court and shall include a final decree order that (i) orders the closing of the case and (ii) identifies in the caption and in the body of the order the case name and the case number of each case to be closed under the order.

---

[24]    *Toft*, 453 B.R. at 194; *see also In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 882 (Bankr. S.D.N.Y. 2021) ("Even in Circuits where third-party releases in United States bankruptcy cases are categorically impermissible, . . . such relief may be permitted under chapter 15." (citing cases); *In re Sino-Forest Corp.*, 501 B.R. 655, 661-666 (Bankr. S.D.N.Y. 2013).

[25]    11 U.S.C. § 1517(d).

[26]    11 U.S.C. § 350(a).

> The foreign representative shall file a certificate of service with the Court that notice has been given. If no objection has been filed by the United States Trustee or a party in interest within 30 days after the certificate is filed, there shall be a presumption that the case has been fully administered and the Court may close the case.[27]

28.   A party may apply for an order closing a bankruptcy case after substantially all of the issues have been resolved and the case has been substantially consummated.[28] A case may be considered fully administered when all administrative claims have been provided for and there are no outstanding motions, contested matters or adversary proceedings.[29]

29.   A chapter 15 case is deemed to be fully administered when the purpose for the foreign representative's appearance is complete.[30] If no objection to a final report is filed after 30 days' notice, the case is deemed to have been fully administered and the chapter 15 case may be closed.[31]

30.   Once the Debtors close the sale transaction pursuant to the Canadian Sale Order and the order granting the Sale Recognition Motion and the Monitor files the requisite certificate in accordance with the Ancillary Order, the CCAA Proceedings will be terminated and the purpose of the Foreign Representative's appearance will be complete. There will be no outstanding motions, contested matters, or adversary proceedings in these Chapter 15 Cases. Pursuant to the orders entered by the Canadian Court, the Foreign Representative will have disposed of all of the Debtors' assets in the United States and is authorized by the Ancillary

---

[27]   Local Rule 5009-2.

[28]   *See In re A.H. Robins, Co., Inc.*, 219 B.R. 145 (10th Cir. 1998).
[29]   *See In re Kliegl Brothers*, 238 B.R. 531 (Bankr. E.D.N.Y. 1999).
[30]   *See* Fed. R. Bankr. P. 5009(c).
[31]   *Id.*; Local Rule 5009-2(b); *In re Ginsberg*, 164 B.R. 870, 873 (Bankr. S.D.N.Y. 1994).

Order to close the Debtors' cases.    Consequently, the Chapter 15 Cases will be fully administered and ripe for closure.

31.    Bankruptcy Rule 5009(c) also requires that the foreign representative file a final report when the purpose of the foreign representative's appearance has been completed, which report should describe the nature and results of the foreign representative's actions in the chapter 15 case.[32]  To reduce the costs and expenses for the benefit of the Debtors and their creditors, the Foreign Representative requests that this Motion and the Ancillary Order (to be supplemented by the filing of the Notice of Full Administration) be deemed as the Foreign Representative's final report under Bankruptcy Rule 5009(c) and the written motion seeking entry of a final decree in these Chapter 15 Cases under Local Rule 5009-2, subject to the 30-day objection period upon the filing of the Notice of Full Administration.  Upon the filing of a certification of no objection or a certification of counsel indicating that no objections were received to the Notice of Full Administration, or that any such objections have been resolved by the Foreign Representative and the applicable objecting party, the Foreign Representative respectfully requests that the Court enter the Proposed Case Closing Order.

32.    The Foreign Representative submits that this Motion and the Ancillary Order, together with the other filings in these Chapter 11 Cases and the CCAA Proceedings, fully describe the activities that the Foreign Representative took or needs to take to fully administer these Chapter 15 Cases, their nature, and likely result, and neither notice nor ability to object to the closing of these Chapter 15 Cases will be compromised under the foregoing procedure.  Accordingly, by this Motion, the Foreign Representative submits that the Chapter 15 Cases will soon be ready for closure and thus seeks approval of the foregoing procedures for their closure.

---

[32]    Fed. R. Bankr. P. 5009(c).

**<u>NOTICE</u>**

33.     In accordance with Local Rule 5009-2, notice of this Motion will be provided to: (i) all persons or bodies authorized to administer foreign proceedings of the Debtors; (ii) principal parties that have appeared in the CCAA Proceedings as of the date of service of the relevant pleadings; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Debtor's secured creditors and their counsel, if known; (v) counsel to any parties in ongoing litigation with the Debtors; (vi) the Office of the Delaware Secretary of State; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested herein, the Foreign Representative submits that no other or further notice of this Motion is necessary or required.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: July 1, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*

Steven W. Golden (DE Bar No. 6807)
Colin R. Robinson (DE Bar No. 5524)
Brooke E. Wilson (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Tel: 302-652-4100
Fax: 302-652-4400
sgolden@pszjlaw.com
crobinson@pszjlaw.com
bwilson@pszjlaw.com

-and-

**BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG LLP**

Nathan Q. Rugg (admitted *pro hac vice*)
Alexander F. Berk (admitted *pro hac vice*)
200 West Madison Street, Suite 3900
Chicago, IL 60606
Tel.: (312) 984-3100
Fax: (312) 984-3150
nathan.rugg@bfkn.com
alexander.berk@bfkn.com

*Attorneys for Foreign Representative*